A02A2277. BARNES v. ST. STEPHEN'S MISSIONARY BAPTIST
CHURCH.
(580 SE2d 587)

SMITH, Chief Judge.

Harriett Barnes appeals from the grant of summary judgment in favor of St. Stephen's Missionary Baptist Church in this premises liability suit. Finding no error, we affirm.

Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law. *Matthews v. The Varsity*, 248 Ga. App. 512 (546 SE2d

---

878) (2001). On appeal from a grant of summary judgment, we apply a de novo standard of review and "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and footnote omitted.) Id. Viewed in this light, the record shows that Barnes was assaulted and seriously injured on her way home late one evening from a neighborhood convenience store. Her assailant crept up behind her as she walked along the sidewalk near St. Stephen's Missionary Baptist Church on Ralph David Abernathy Boulevard in downtown Atlanta. The church building was abandoned. Barnes speculates that her assailant was hiding behind bushes near the church; however, she did not see him before he hit her on the back of her head. A narrow window well extends along the west wall of the building and terminates in stairs several feet from the sidewalk, but Barnes denied in her deposition that she fell or was pushed down those stairs. During the attack, Barnes's back was injured and her legs paralyzed. While Barnes lay immobile, she testified, a second assailant emerged from a door on the church property. This person raped Barnes and left her.

The church adamantly disputes that any doorway on the church property was open. Approximately two years before the assault, after the church moved to another location, the building's ground floor windows and doors were sealed with concrete blocks, except for one locked basement door on Central Avenue, at the opposite corner of the church from the location at which Barnes testified the assault occurred. A police officer testified that he inspected the church four weeks after the assault and that "the basement and ground-level doors and windows were sealed with concrete blocks." The officer took photographs of the church, showing the sealed door and window openings and the basement door.

Barnes presented no evidence establishing that her assailants or any others were living on the property or that the building was being used generally for criminal activity at the time of the attack. The evidence did show that the building was in poor repair and that vandals had taken windows out of the church. While Barnes contends in her brief that problems with transients and vagrants continued despite the church's attempts to secure the building, citing various portions of the record, the testimony cited instead shows problems with people loitering on the street during services before the church relocated or problems with vandals and transients in the building before the building was finally secured. After the use of plywood to board up the building was unsuccessful, the church voted in September 1991 to close the doorways with concrete blocks and did so shortly afterward. Contrary to Barnes's assertion in her brief, the cited testimony does not demonstrate that the blocking of the doorways was inadequate, much less that St. Stephen's was "well aware of the inadequacy of its

purported corrective measures." To the contrary, one of the deacons who has visited the old church building once or twice a week since the move saw no one loitering near the church and found no sign of anyone living there, other than some clothing, "just some pants, a shirt or something like that," on the premises on one occasion "right after we moved."

1. *Negligence Claim.* Summary judgment was proper because Barnes failed to establish the church owed her a duty of care under the circumstances of this premises liability action. "The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law." (Citations and footnote omitted.) *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993).

"Generally, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others." (Footnote omitted.) *Thomas v. Food Lion*, 256 Ga. App. 880, 882 (1) (570 SE2d 18) (2002). A landowner's duty to protect an individual against foreseeable criminal acts arises from the landowner's control over the premises and depends upon the individual's relationship to the landowner or upon his or her status as an invitee, licensee, or trespasser with respect to the property on which the crime occurred. See generally OCGA §§ 51-3-1; 51-3-2.

OCGA § 51-3-1 requires that a landowner exercise ordinary care in keeping the premises and approaches safe for invitees. But "[t]his statute does not purport to govern every instance of one going upon the land of another. Only where the owner or occupier invites, induces or leads another to come on his land for a lawful purpose is the statute implicated." *Todd v. F. W. Woolworth Co.*, 258 Ga. 194, 195 (1) (366 SE2d 674) (1988).[1] Georgia decisions considering the liability of property owners for criminal acts by third parties uniformly limit their discussions to the claims of invitees. See, e.g., *Rice v. Six Flags Over Ga.*, 257 Ga. App. 864, 866-867 (572 SE2d 322) (2002), and cases cited therein.

Here, the record establishes that Barnes was a member of the general public, a passerby. She had no relationship with the church, nor was she an invitee, a tenant, a licensee, or even a trespasser to whom the church owed a duty of care under Georgia law. Nevertheless, Barnes contends the church owed her a duty of care because the

---

[1] In contrast, under OCGA § 51-3-2 (b), a landowner is "liable to a licensee only for willful or wanton injury." "To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps, and things of that character." (Citation and punctuation omitted.) *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1) (522 SE2d 739) (1999).

church should have foreseen that a criminal might use an abandoned building as a haven or hideout when preying on the general public.

Georgia law has recognized that a landowner may have a duty toward those traveling a public way adjacent to the property in certain limited circumstances. For example, a landowner owes to invitees a duty to keep safe not only the premises themselves but also the approaches along which invitees enter the property. *Todd*, supra, 258 Ga. at 196. This duty, however, does not extend to "mere pedestrians." Id. at 197 (2). Landowners also owe a duty to passersby to protect them from objects falling from their property onto the public way, such as trees with patent visible decay. See *Wade v. Howard*, 232 Ga. App. 55, 58 (499 SE2d 652) (1998). And while landowners may not maintain a pitfall, mantrap, or other hazardous condition near a public way, "[i]f a peril is not so close to a traveled way to pose a danger to those accidentally stepping off that path, it is not a mantrap. [Cit.]" *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1) (522 SE2d 739) (1999); see also *Aldredge v. Symbas*, 248 Ga. App. 578, 580 (547 SE2d 295) (2001).[2]

But in contrast to these limited exceptions, Georgia law provides that a landowner has no general duty to protect an individual from the criminal acts of third persons. *Rice*, supra, 257 Ga. App. at 866-867; *Godwin v. Olshan*, 161 Ga. App. 35 (288 SE2d 850) (1982). In *Godwin*, a business invitee who was attacked in a leased portion of a shopping center not under the control of the landlord argued that increased security in the common areas of the center, which were under the landlord's control, could have deterred "the criminal element" from entering the adjoining area where he was injured. We rejected this argument, observing:

> There would also be exceptional uncertainty with respect to the issue of causation. This is so because of the extraordinary speculation inherent in the subject of deterrence of men bent upon criminal ventures. It would be quite a guessing game to determine whether some unknown thug of unknowable character and mentality would have been deterred if the owner had furnished some additional policemen.

(Citation and punctuation omitted.) Id. at 37 (3).

---

[2] Barnes argues on appeal that the stair leading to the window well was so close to the right-of-way that it constituted such a hazardous artificial condition on the property. But assuming without deciding that an ordinary stair located several feet from the public sidewalk can be construed as such a condition, in Barnes's deposition she testified that she was not thrown down stairs but over a wall.

Similarly, Barnes's unsupported speculation that her assailant may have concealed himself in the bushes near the church building before attacking her on the public sidewalk does not establish a causal relation between the condition of the property and the attack or a duty on the part of the church to protect her from such a criminal assault by a third party. As one court has explained:

> A contrary ruling would, in effect, impose a duty upon all property owners, especially those in high crime areas, to protect the general public from criminal activity committed on the property by third persons. This would include most unimproved lots and well-maintained buildings wherever the criminal could perform his misdeeds out of the public's watchful eye. Public policy, we believe, would not favor such a holding. Although defendants may have owed a duty to plaintiff against harm caused by the dilapidated condition of the building (e.g., injury caused by a falling brick or broken glass), that duty does not extend to the unforeseeable criminal activity of third persons.

(Citation omitted.) *Roberts v. Pinkins*, 171 Mich. App. 648, 654 (430 NW2d 808) (1988). The trial court did not err in granting summary judgment on Barnes's negligence claim.

2. *Nuisance Claim.* To be liable under a nuisance theory under the facts of this case,[3] the church must have created or maintained a continuous or regularly repeated act or condition on the property, which caused Barnes's injury. See, e.g., OCGA § 41-1-1; *Banks v. Mayor &c. of Savannah*, 210 Ga. App. 62 (1) (435 SE2d 68) (1993). A one-time occurrence does not amount to a nuisance. Id. "The whole idea of *nuisance* is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury. A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated." (Citation and punctuation omitted.) *Ingram v. Baldwin County*, 149 Ga. App. 422, 423 (254 SE2d 429) (1979). In this case, Barnes failed to come forward with evidence, other than of her own attack, that the building was currently and regularly being used for criminal activity of the kind that caused her injury. Under these circumstances, summary judgment was proper.

---

[3] The record does not establish that the church property was a nuisance per se. " ' "A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." ' " *Asphalt Products Co. v. Marable*, 65 Ga. App. 877, 879 (16 SE2d 771) (1941); *Gatewood v. Hansford*, 75 Ga. App. 567, 569-570 (44 SE2d 126) (1947).

*Judgment affirmed. Eldridge and Barnes, JJ., concur. Ellington, J., disqualified.*

DECIDED MARCH 19, 2003 —
RECONSIDERATION DENIED APRIL 8, 2003 —

*Reynolds & McArthur, W. Carl Reynolds, Bradley J. Survant, William P. Keenan*, for appellant.
*Drew, Eckl & Farnham, Patricia G. Lynch*, for appellee.