## A11A2136. THE BETHANY GROUP, LLC v. GROBMAN.
(727 SE2d 147)

DOYLE, Presiding Judge.

We granted this application for interlocutory appeal from the trial court's order denying a motion for summary judgment filed by The Bethany Group, LLC, in an action alleging claims for premises liability and private nuisance filed by Janice C. Grobman, individually and as personal representative of her late husband's estate, after her husband, Dean Grobman, was found shot to death in his taxi cab at an apartment complex operated by Bethany. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence presented established that in the late-night hours of November 8, 2007, Mr. Grobman was dispatched to pick up a passenger at the Alden Ridge apartment complex, which was owned and operated by Bethany. The potential passenger identified himself to the dispatcher at Mr. Grobman's employer, Decatur's Best Taxi Service, as "Jamal," and the caller's number was eventually traced by police to a disposable cell phone. At approximately 1:50 a.m. on November 9, a DeKalb County police officer responded to an emergency call at Alden Ridge and found Mr. Grobman slumped over the steering wheel of his taxi with a gunshot wound to the head. Police never determined "Jamal's" actual identity, and because his identity

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

remains a mystery, it is unknown whether "Jamal" was a resident of Alden Ridge, the guest of a resident, or a trespasser.

Approximately two years prior to Mr. Grobman's murder, Bethany had hired a security company to surveil the complex. Willie Manson, the owner of the security company, deposed that his company initially provided four security officers for twenty-four hour coverage at the complex. When his company was terminated in February 2007, they were providing only two security officers, five days a week, for four to five hours per shift. Manson was told by the on-site managers that Bethany's upper management believed the security services were too costly. Manson also deposed that during his company's employment, he was aware of at least two robberies of taxi drivers and two or three robberies of pizza delivery drivers, which robberies occurred during the hours his company was off-duty.

The appellee also presented evidence that Bethany was aware of other incidents of crime at Alden Ridge, including (1) robberies of persons lured to the premises in response to fake online advertisements; (2) robberies of customers lured onto the property by prostitutes; (3) three or four incidents of trespassers using vacant apartments to lure people for robbery; (4) gang violence; and (5) threats directed at Manson's employees and Alden Ridge's own courtesy officer. Eight days prior to Mr. Grobman's murder, Bethany's courtesy officer reported to Bethany the armed robbery of a pizza delivery person at a vacant apartment, and six days before Mr. Grobman's murder, the courtesy officer assisted police officers responding to a report of a shooting at the complex.

After a hearing on Bethany's motion for summary judgment, the trial court issued an order denying the motion, finding that genuine issues of material fact existed.[2] The trial court issued a certificate of immediate review, and this Court granted Bethany's application for interlocutory appeal.

1. *Premises Liability.* (a) Bethany first argues that the trial court erred by denying its motion for summary judgment because Mr. Grobman was a licensee on the premises, and the record does not establish sufficient facts for a jury to find that any failure on the part of Bethany to provide security or keep the premises safe was wilful or wanton. We disagree.

In this case, the facts presented at summary judgment render it impossible to determine whether Mr. Grobman was called to the premises by a resident of the complex, thereby having a business

---

[2] A transcript of the hearing does not appear in the record on appeal.

relationship with an occupier of the land, or whether another individual with no relationship to Bethany lured him to the complex.[3] Indeed, the trial court did not expressly rule on this issue, finding only that material issues of fact remained, which precluded a grant of summary judgment.[4] Even if Mr. Grobman's legal status was that of a licensee, the trial court correctly denied summary judgment here.

That is because

> it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises. Accordingly, if a danger to a licensee is known and foreseen by the property owner, then the owner must exercise ordinary care and diligence to protect that licensee from the peril.[5]

"The standard of 'wilful or wanton' imports deliberate acts or omissions, or such conduct that discloses an inference of conscious indifference to consequences."[6]

The record establishes that Bethany had knowledge that taxi drivers were regularly called to the premises to transport tenants or guests of tenants, and therefore, Bethany reasonably should have anticipated Mr. Grobman's presence on the property. In support of the propositions that Mr. Grobman was a licensee and that it breached no duty owed to him, Bethany cites to *Spear v. Calhoun*[7] and *Barnes v. St. Stephen's Missionary Baptist Church*.[8] In those cases, however, the plaintiffs presented no evidence that the landlords had prior knowledge of crime on their properties, and this Court therefore

---

[3] Cf. *Wojcik v. Windmill Lake Apts.*, 284 Ga. App. 766, 768-769 (645 SE2d 1) (2007) (physical precedent only) (utilizing an invitee analysis to address the duty owed to a pizza delivery man, who was robbed and strangled in a vacant apartment by a tenant's guest, who called for the pizza, without expressly determining that the delivery man was an invitee).

[4] See, e.g., *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874, 875 (2) (392 SE2d 535) (1990) (summary judgment precluded by issues of fact as to status).

[5] (Punctuation and footnotes omitted.) *Rigdon v. Kappa Alpha Fraternity*, 256 Ga. App. 499, 501 (1) (568 SE2d 790) (2002). See also *McCullough v. Reyes*, 287 Ga. App. 483, 487 (2) (651 SE2d 810) (2007).

[6] *Spear v. Calhoun*, 261 Ga. App. 835, 837 (1) (584 SE2d 71) (2003).

[7] Id. (decedent was killed by a stray bullet on New Year's Eve night, but there was no evidence that the landlord knew that tenants shot firearms in celebration of the evening, although he knew of drug activity by armed dealers in the complex, and the bullet injuring the victim may have come from elsewhere).

[8] 260 Ga. App. 765, 767 (580 SE2d 587) (2003) (church not liable for injuries sustained by passerby when one assailant attacked her after hiding behind bushes near the abandoned church building and another hailed from the church's door and raped her).

concluded the landowners breached no duties to the respective plaintiffs. In this case, there was evidence that Bethany knew that armed robberies had occurred on the property, even though no one had been murdered on the premises, and that it should have anticipated Mr. Grobman's presence on the property. The Supreme Court of Georgia has held that

> [w]hile the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident. Further, the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.[9]

Thus, a question of fact exists as to whether Bethany breached a duty to protect Mr. Grobman from the peril.

(b) Bethany also argues that the trial court erred by denying its motion for summary judgment because any breach on its part was not the proximate cause of Mr. Grobman's death — because the assailant's act in this case was an intervening cause of Grobman's death.

"Generally, the independent, intervening criminal act of a third party . . . will be treated as the supervening proximate cause of such injury . . . *unless* such intervening criminal act was a reasonably foreseeable consequence of defendants' negligent act or omission."[10]

> The question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than for summary adjudication by the courts. The record demonstrates that [Bethany] had actual knowledge of the particular dangerous condition of serious crime in the area and on the premises and of the risks posed by dangerous characters involved in that type of activity. The jury may find that the particular danger which resulted in the [death of Mr. Grob-

---

[9] (Citation and punctuation omitted.) *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997) (evidence of prior burglaries was sufficient to give rise to a triable issue as to whether landlord had duty to exercise ordinary care to safeguard against risks posed by prior burglaries where the plaintiff was raped). See also *Rigdon*, 256 Ga. App. at 501 (1).

[10] (Emphasis supplied.) *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880, 884 (2) (524 SE2d 524) (1999).

man] in this case was foreseeable under all the circumstances, and that [Bethany was] negligent in failing to exercise ordinary care to guard against it.[11]

Viewing the evidence of Bethany's knowledge of the previous armed robberies and the testimony of Manson that such incidents increased after Bethany reduced its security, and making all reasonable inferences in the nonmovant's favor, a triable issue remains as to whether Bethany's failure to retain security on the premises or take other precautions was the proximate cause of Mr. Grobman's death.[12]

2. *Nuisance.* Bethany contends that the trial court erred by denying its motion for summary judgment as to the nuisance claim because there is no evidence that it created or maintained a regularly repeated act or condition at the complex that led to Mr. Grobman's death.

"To be liable under a nuisance theory under the facts of this case, [Bethany] must have created or maintained a continuous or regularly repeated act or condition on the property, which caused [Mr. Grobman's] injury."[13] The record contains ample evidence of repeated instances of armed robberies at Alden Ridge, establishing a question of fact as to whether Bethany created or maintained a nuisance at the complex.[14]

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED MARCH 29, 2012 — 

*Hawkins, Parnell, Thackston & Young, Warner S. Fox, Patricia M. Peters, Michael J. Goldman, Christopher S. Keith*, for appellant.

*Deitch & Rogers, Gilbert H. Deitch, Andrew T. Rogers*, for appellee.

---

[11] (Citations and punctuation omitted.) *Walker v. St. Paul Apts.*, 227 Ga. App. 298, 300-301 (489 SE2d 317) (1997).

[12] See *FPI Atlanta, L.P.*, 240 Ga. App. at 884 (2).

[13] *Barnes*, 260 Ga. App. at 769 (2), citing OCGA § 41-1-1; *Banks v. Mayor & City of Savannah*, 210 Ga. App. 62 (1) (435 SE2d 68) (1993).

[14] Compare with *Barnes*, 260 Ga. App. at 769 (2) (single instance of criminal activity insufficient to establish claim of nuisance against a landowner).