Sherri Ann Lee **FERGUSON**, Appellant,

v.

Hollis James **ORR**, et al., Respondents.

No. C3–88–754.

Court of Appeals of Minnesota.

Aug. 23, 1988.

Review Denied Oct. 26, 1988.

Lee A. Bernet, Bernet & Guy, St. Paul, for appellant.

Lee L. LaBore, Steven L. Viltoft, Lee L. LaBore & Assoc., Ltd., Hopkins, for respondents.

Considered and decided by PARKER, P.J., and HUSPENI and SHORT, JJ.

## OPINION

PARKER, Judge.

The heirs of Elizabeth Orr brought this wrongful death action and dramshop case after she was killed in an auto accident when her husband, Hollis James Orr, was driving. The jury found no liability in the dramshop defendant, found Hollis Orr 65 percent and Elizabeth Orr 35 percent negligent in the wrongful death count, but awarded zero damages to the heirs. Sherri Ann Lee Ferguson, trustee for the heirs of the deceased, moved for a new trial on the issue of damages alone. Because the trial judge was ill, the motion was heard by a different judge, who granted a new trial. Orr moved for review of that order and the original trial judge vacated it. Ferguson now seeks a new trial on damages only, pursuant to Minn.R.Civ.P. 59.01(5) and (7). We reverse and remand for trial on the issue of damages.

## FACTS

Appellants in this wrongful death action are Elizabeth Orr's heirs: her mother, Lorraine Cherry; her daughters, Sherri Ann Lee Ferguson and Mary Susan Lee Foutz; and her grandchildren, Matthew Ferguson and Christie Ann Foley. Sherri Ferguson is trustee for the heirs. A third daughter, Kim Marie Orr, withdrew from the action shortly before trial.

Elizabeth "Betty" Orr was 57 years old when she died in 1985. By her first marriage she had two daughters, Sherri and Susan, and divorced in 1946. When Betty married Hollis Orr in 1959, she and her two daughters, then ages 8 and 13, moved to his farm in Eagan, Minnesota. Although previously married, Hollis had no children. On April 26, 1960, Kim Marie Orr was born. Betty did not work outside the home, but worked as an equal partner on the farm, raising horses and growing crops during their 26-year marriage.

Susan remained at home for three years, until she married, and is presently 41 years old. She testified that Betty and Hollis had been generous to her and remained closely involved in her life. They gave her a car in 1961, money to support her daughter Christie, and a $3,000 loan in 1974, $2,000 of which was later forgiven. In 1976 they loaned Susan and her future husband $13,000. Hollis testified that Betty forgave this loan without his agreement and he considers this money still due him.

Susan testified that her daughter Christie had a close relationship with her grandmother. Betty babysat her, bought all her clothes, and saw her daily for the first ten

years of her life. In 1974 Christie stayed with Betty for six months while Susan and her husband were in Bismark, enabling Christie to stay in school. She is now 23 years old; about two years ago Betty sent her $2,000 for a car.

Sherri moved out of the family home in 1969, but stayed close to her mother through daily phone calls and weekly visits. She married and had a child, Matthew Herda, and divorced in 1973. Sherri testified that Betty assisted her financially from 1973–78 by buying groceries and clothes and helping with gas money and car repairs. In 1978 she remarried, but still kept daily contact with her mother. Betty paid for Sherri's washer and dryer and sent her $5,000 in 1981 to help out.

Sherri testified that Betty was particularly close to Matthew. He spent the last two summers with her in Minnesota and was staying with her at the time of the accident.

Both daughters eventually moved to Arizona; however, Sherri and her family vacationed in Minnesota each summer and stayed with Betty and Hollis. In return Betty and Hollis traveled to Arizona each winter for a visit. In 1983 Betty and Hollis purchased a house in Arizona and planned to move there.

After her husband died and she sold her home Lorraine Cherry, Betty's mother, lived with Betty and Hollis for about ten years. She moved in temporarily, suffered a stroke and stayed on, paying a nominal rent of $150 per month. Nearly 80 years old at the time of trial, Mrs. Cherry testified that she had planned to move to Arizona with Betty and Hollis and that she had a close relationship with her daughter.

## ISSUE

Is the jury's award of zero damages for pecuniary loss of the heirs, coupled with a finding of respondent's liability, justified by the evidence?

1. Because the trial judge was ill, Ferguson's motion for a new trial was heard by a different judge, who ordered a new trial. Orr moved for reconsideration of that order, and after the trial

## DISCUSSION

The jury verdict determined that Betty Orr's daughters, grandchildren and her mother had collectively suffered no damages for pecuniary loss as a result of her death; they ascribed 65 percent negligence to Hollis Orr and 35 percent negligence to Betty Orr for the death.[1]

A verdict will not be disturbed if the evidence reasonably tends to support it. *Gordon v. Hoffman*, 303 N.W.2d 250, 252 (Minn.1981). An answer to a special verdict question will be set aside only when it is perverse and contrary to the evidence or when the evidence is so clear as to leave no room for differences among reasonable people. *Jacobs v. Rosemount Dodge Winnebago South*, 310 N.W.2d 71, 76 (Minn. 1981).

Minn.Stat. § 573.02 (1984) allows for damages in a wrongful death action in an amount "the jury deems fair and just in reference to the pecuniary loss resulting from the death." Loss of support is not equivalent to pecuniary loss. *Jones v. Fisher*, 309 N.W.2d 726, 730 (Minn.1981). It is not limited to income contribution, but includes advice, counsel and loss of companionship. *Id.* at 730.

In *Fussner v. Andert*, 261 Minn. 347, 113 N.W.2d 355 (1962), parents brought a wrongful death action for the death of their child. The supreme court held that limiting the measure of recovery to loss of earnings, contributions and services was unduly restrictive because it excluded the loss of aid, comfort and society. *Id.* at 352, 113 N.W.2d at 359. The court stated:

[T]here is a growing appreciation of the true value to the parent of the rewards which flow from the family relationship and are manifested in acts of material aid, comfort, and assistance which were once considered to be only of sentimental character. * * *

The [wrongful death statute] is remedial in character and it is the court's duty to

judge recovered, he vacated the first order. We are troubled by this procedure but, lacking guidance in the rules or case law, we consider the matter on the merits.

construe it liberally in light of current social conditions.

*Id.* at 353–54, 113 N.W.2d at 359.

Because of Betty's death, Lorraine Cherry has lost all the comfort and aid that Betty extended to her, i.e., taking her to doctor's appointments, shopping, sharing confidences and providing her with a home. The record shows that this relationship alone, according to the standard articulated in *Fussner,* establishes pecuniary damages.

In *Pehrson v. Kistner,* 301 Minn. 299, 222 N.W.2d 334 (1974), the jury in a wrongful death action awarded less than the stipulated funeral and burial costs for their unborn, viable child. The court held that a verdict providing *less* than ascertainable special damages "indicates prejudice" and therefore required a new trial. *Id.* at 303, 222 N.W.2d at 337. The holding in *Pehrson* is "posited on the premise that both negligence and causation have been established." *Hair v. Miller,* 374 N.W.2d 223, 225 (Minn.Ct.App.1985).

■■■ Had either liability or causation not been found against Hollis, an award of no damages would be harmless; however, because both were established, it can be inferred that the jury's verdict was predicated upon passion and prejudice. As stated in *Pehrson,*

> it is difficult to visualize a case where a human being does not have some monetary value in addition to special damages incurred by next of kin.

*Id.* 222 N.W.2d at 337. This is the presumption that must be overcome; it is a rare life that is monetarily worthless. The evidence does not indicate that Betty Orr's was such a life.

Hollis Orr claims that *Flanagan v. Lindberg,* 404 N.W.2d 799 (Minn.1987), "overturned" the *Pehrson* holding. That personal injury case, however, merely held that a jury verdict for less than stipulated medical expenses is not necessarily inadequate. *Id.* at 800. *Flanagan* did not address the principal concern of *Pehrson*— the necessary value to heirs of a lost human life, given a finding of liability.

*Larson v. Moorhead Country Club,* 395 N.W.2d 448 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 23, 1986), involved a dramshop action where this court held that the finding of no liability was contrary to the evidence. As a result the finding of zero damages became prejudicial. *Id.* at 450–51.

The record shows that Betty Orr regularly contributed money, advice, comfort and companionship to her mother, who lived with her; to her daughters, whom she visited frequently and planned to live near; and to her grandchildren, one of whom was staying with her when she died. These family members certainly had the reasonable expectation of her continued kindness and emotional, as well as financial, support.

The special verdict form given to the jury did not separate the five individual plaintiffs in this action, and the jury had no way of distinguishing their claims. Because Betty's mother and grandson were in her home when she died, and there is no indication of a rift in those relationships, there is no discernible explanation for the jury's award of zero damages as to those two plaintiffs. Of course, if it is shown that there was an estrangement between the decedent and an heir, the jury is free to reflect that in the award.

Hollis Orr argues that because Betty did not hold a job outside the home after they married, all the financial contributions, loans, cars and gifts to the children and grandchildren were really a result of *his* generosity. Although financial support need not be shown to prove pecuniary damages, this argument is contrary to Minnesota's marital property statutes. Minn.Stat. § 518.58, subd. 1 (Supp.1987), states a conclusive presumption that although one spouse may have been a homemaker, "each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife."

Hollis Orr argues that it was mere coincidence and a dry climate that caused them to purchase a home in Tuscon, Arizona, just 120 miles from both of Betty's daughters. He claims that his relationship with

his two stepdaughters is now strained as a result of this lawsuit. He contends that the $13,000 loan to Susan is still owed to him.

All these arguments misplace the focus of the analysis for pecuniary damages. The question is not whether Hollis was close to Sherri and Susan, but whether *Betty* was. Even though Hollis contends that Susan still owes him money, he readily admits that Betty considered the loan forgiven. The focus here is *her* generous nature and the bonds that formed with her family as a result.

In the absence of sufficient evidence of estrangement, we reverse and remand for trial on the issue of damages alone.

Reversed and remanded for trial on the issue of damages.