A95A1948. BUNCH v. MATHIESON DRIVE APARTMENTS, INC.
(470 SE2d 895)

Smith, Judge.

After a fire began near the gas oven in Starlyn Pettis's apartment, she died from smoke inhalation. Sandra Bunch, Pettis's mother, brought this action for the wrongful death of Pettis and to recover funeral expenses. She alleged that Mathieson Drive Apartments, Inc. (Mathieson) negligently failed to furnish the apartment with a smoke detector and that this alleged negligence was the proximate cause of Pettis's death.[1]

The case was tried to a jury. Evidence was presented that on the night of Pettis's death she smoked marijuana and consumed a large amount of alcohol. Two blood alcohol analyses were performed after her death, one revealing a .27 blood alcohol concentration, and one revealing a .30 blood alcohol concentration. Expert testimony established that these levels were such that the average person would be "almost anesthetized" or would "pass out." Investigation revealed that the gas range was turned on and that the wooden cabinet around it ignited. A box of frozen lasagna was discovered on one of the counters in the kitchen. The fire investigator opined that Pettis had attempted to leave the burning apartment but was overcome by smoke and passed out. He stated that no smoke detector was installed in the

---

[1] Bunch also sued Maytag Corporation, the manufacturer of the oven, the individuals who installed the oven, and Mathieson Drive Apartments, Inc. in prior actions. Summary judgment or partial summary judgment was granted to all defendants. We consolidated the appeals from these judgments in Bunch v. Maytag Corp., 211 Ga. App. 546 (439 SE2d 676) (1993). Originally, Bunch claimed that Mathieson negligently installed and maintained the gas oven and also failed to furnish the apartment with a smoke alarm. The trial court granted partial summary judgment to Mathieson, finding that no evidence showed that an act or omission by Mathieson in the maintenance and installation of the oven was the proximate cause of the fire. We affirmed, finding that Bunch failed to show that Mathieson had been negligent and also that her contention against Mathieson was abandoned pursuant to Court of Appeals Rule 15 (c) (2) (now Rule 27 (c) (2)). 211 Ga. App. at 549. Thus, the only claim remaining against Mathieson concerned the alleged negligent failure to provide a smoke detector.

apartment when the fire occurred. The owner of the apartment building testified, however, that a smoke detector had been installed in the kitchen prior to the fire. Moreover, the inspector acknowledged that he found a smoke detector in a plastic bag in a closet, and a previous tenant testified a smoke detector existed in the apartment when she lived there.

The evidence showed that prior to the fire in which Pettis died, a "near" fire occurred in her apartment. Upon learning that smoke was billowing out of the apartment, the owner attempted to enter the locked apartment by striking and kicking the door. Unable to break down the door, he returned with a pass key to find smoke coming from a pot on the stove and Pettis asleep on the sofa. She remained asleep until after the fire was extinguished. He testified that the smoke detector originally installed in the apartment was missing and that its place was covered by a decorative basket. When he returned a short time later to install another smoke detector, Pettis would not allow him to enter the apartment. Some evidence was presented that Pettis complained about the smoke detector going off when she was cooking. An air conditioning repairman testified that he had observed the smoke detector, but in "late September just before the fire" it was missing, and that Pettis told him she had removed it.

Evidence was also presented that Pettis often consumed large amounts of alcohol, that she often smoked marijuana and used other drugs, and that her abuse of alcohol affected her work performance as a receptionist at a dance school. Her work records indicated that during the five years she worked there, she was late to work fifty-four times and absent for eighty days. She quit her job of five years without notice when a "no-smoking" policy was implemented at the dance studio where she worked. Some evidence was presented that she admitted to an alcohol problem. Her former employer testified that Pettis was "very depressed" when she drank alcohol and that she felt unloved by her mother. Some evidence also indicated that Pettis had financial problems.

The verdict form provided to the jury was in the following format: "I. We the jury find for the plaintiff in the amounts that follows [sic]: (a) Wrongful death _____. (b) Funeral expenses _____. OR II. We the jury find for the defendant. [ ] Check box if applicable." The jury returned a verdict with the word "zero" written in the blank next to wrongful death and with "100%, $7,050.00" written in the blank next to funeral expenses. The box to be checked if the jury found for the defendant was left blank.

Bunch moved for a mistrial, and later for a new trial, on the ground that a finding of entitlement to funeral expenses combined with a finding of zero value for the wrongful death of Pettis was inconsistent. In denying Bunch's motions, the trial court acknowledged

that the verdict appeared to be inconsistent but nevertheless found that the jury could have "utilized the concept of comparative negligence in arriving at a determination of liability." Also, according to the trial court, the evidence presented authorized the jury to find that Pettis placed no value on her own life. The court stated that the evidence of excessive alcohol consumption and evidence that a prior fire had occurred in her apartment authorized the jury to find that Pettis's life was worth nothing to her. The trial court agreed that "from a moral standpoint . . . all life . . . has value." Nonetheless, it found that "there exists [sic] in our range of human experiences situations we can readily identify where . . . human beings . . . place no value on their own life; they commit suicide." Bunch appeals the denial of her motion for new trial.

1. Whether to grant or deny a new trial on the grounds asserted by Bunch was within the "sound legal discretion" of the trial court. OCGA § 5-5-25. Although we recognize the deference that must be given to a trial court's denial of a motion for new trial, because the verdict was inherently inconsistent and ambiguous, we conclude that the trial court abused its discretion in upholding the verdict and denying Bunch's motion for new trial.

*Jordan v. Ellis*, 148 Ga. App. 286 (250 SE2d 859) (1978) provides some guidance in our analysis. Following their son's death in an automobile accident, Mr. and Mrs. Jordan filed separate suits. Mr. Jordan sued for funeral and other expenses, and Mrs. Jordan sued for wrongful death. Id. The suits were consolidated and were tried to the same jury. The jury found against both defendants involved in the litigation. Mr. Jordan obtained a full recovery of the expenses sought, while Mrs. Jordan obtained recovery of only a fraction of the full value of her son's life as shown by the evidence. Id.

Mrs. Jordan, but not Mr. Jordan, appealed, contending the verdicts were "inconsistent, illogical, inadequate, and illegal." (Punctuation omitted.) Id. Based on the pleadings, the evidence, and the court's charge, this Court found that "the jury applied different rules of law to the amount of damages which were recoverable." Id. at 289. We concluded the only reasonable deduction from the jury's award of full recovery to Mr. Jordan was that the jury, in his case, found no negligence on the part of his deceased son. Id. We also concluded, however, that comparative negligence principles were applied by the jury in determining the amount of damages for Mrs. Jordan's claim for the loss of that son's life. Id. We found these verdicts to be inconsistent, with Mrs. Jordan's verdict based on a correct legal theory, and Mr. Jordan's verdict based on an incorrect theory. Id. at 291. Because Mr. Jordan did not appeal, however, we did not reverse. We stated, "As both [parties] are not before us we cannot place all parties back where they started." Id.

Here, Bunch, acting both as administrator and individually, appeals the verdict. All parties who were before the trial court are before us. In this case, as in *Jordan*, and as acknowledged by the trial court, the verdict is inconsistent. It is subject to conflicting interpretations. The verdict indicates, at least to some extent, the jury's finding that Mathieson was liable, because the box to be checked if the jury found for Mathieson was left blank. It also seems to reflect, as in *Jordan*, that the jury applied comparative negligence principles in reaching its verdict on Bunch's claim for the value of Pettis's life.

Comparative negligence principles, however, do not resolve the facial inconsistencies. If a jury finds the plaintiff less negligent than the defendant, it may find for the plaintiff but may reduce the plaintiff's damages in proportion to his negligence. "Where the evidence authorizes the jury to find that both parties are at fault, but the defendant slightly more so, so as to give the plaintiff a cause of action, a verdict for a *small amount* of damages is proper and should not be disturbed." (Citations and punctuation omitted; emphasis supplied.) *Waggoner v. Bevich*, 127 Ga. App. 877, 879 (2), 880 (195 SE2d 246) (1973). The explicit award for 100 percent of funeral expenses indicates a finding that Pettis was not negligent, because the funeral expenses were not reduced by any amount. The zero damages award on the wrongful death claim, however, seems to indicate that the jury found Pettis to be equally negligent or more negligent than Mathieson. If this were the case, Mathieson should have been found not liable, and *no* damages should have been awarded. The amounts of the two damage awards to Bunch and the finding of liability against Mathieson are contradictory and irreconcilable.

We recognize that *if possible*, even ambiguous verdicts should be upheld. See, e.g., *Harrison v. Martin*, 213 Ga. App. 337, 340 (1), 344 (444 SE2d 618) (1994). This verdict, however, is inexplicable, and we find it impossible to uphold. The trial court should not have entered judgment on the verdict. "A contradictory verdict is repugnant and void; no valid judgment can be entered thereon." *Lynas v. Williams*, 216 Ga. App. 434, 438 (454 SE2d 570) (1995). See also *LDS Social Svcs. Corp. v. Richins*, 191 Ga. App. 695, 698-699 (382 SE2d 607) (1989). The verdict was "too uncertain to be the basis of a valid judgment. It is the duty of a trial judge not to receive an indefinite, imperfect or ambiguous verdict." (Citations and punctuation omitted.) *Zurich American Ins. Co. v. Bruce*, 193 Ga. App. 804 (1), 805 (388 SE2d 923) (1989). "Whenever a verdict is ambiguous and uncertain in its meaning . . . , it is proper to have the jury retire again for the purpose of rendering another verdict, under proper instructions from the court. It is better to do this than to receive the verdict, which would probably have to be set aside on motion for a new trial, resulting in the expense and trouble of another trial." (Citations and punctuation

omitted.) *Colley v. Dillon*, 158 Ga. App. 416, 417-418 (280 SE2d 425) (1981).

The trial court attempted to reconcile the contradictory verdicts by speculating as to the jury's intent in reaching its verdict, but it did not give the jury proper instructions or provide a less ambiguous verdict form. The trial court surmised that some people, as evidenced by their own lifestyles, may place little or no value on their own lives, and it further observed that comparative negligence principles may have been involved in the case; the court then simply entered judgment on the verdict. The trial court's observation that the jury could have based its wrongful death verdict on comparative negligence principles was apt; the record is replete with evidence of Pettis's own, perhaps even gross, disregard for her own well-being. We, too, have speculated that the jury reached inconsistent verdicts on the funeral expenses and wrongful death claims based on comparative negligence principles. These speculations, though, do not change the fact that the verdict is inexplicable, and they do not change the law that abhors ambiguous, uncertain verdicts. See *Lynas*, supra; *Zurich American*, supra. The trial court should have refused entry of judgment on such a verdict.

Finally, we could also attempt to reconcile the verdict by speculating that the jury found Mathieson liable yet determined that Pettis placed no value on her own life. Such a speculation does not salvage this verdict. We agree with the Minnesota Court of Appeals that "it is difficult to visualize a case where a human being does not have some monetary value in addition to special damages incurred by next of kin. . . . This is the presumption that must be overcome; it is a rare life that is monetarily worthless." (Citations and punctuation omitted.) *Ferguson v. Orr*, 427 NW2d 732, 735 (Minn. App. 1988). As here, the jury in *Ferguson* found liability on the part of the defendant yet awarded zero damages. We make no ruling here as to the value of Pettis's life; such a finding (thankfully) is inherently one for the jury. The presumption that a worthless life is rare simply cannot be overcome by a verdict as ambiguous and inconsistent as that here. The trial court abused its discretion in entering judgment on the verdict and denying Bunch's motion for new trial, and we must reverse.

2. Bunch insists that the appropriate remedy is reversal for new trial on damages only. We disagree. While the jury did not *expressly* find for and impliedly found against Mathieson, the verdict, as discussed in the whole of Division 1, was ambiguous and inconsistent. On one hand, if comparative negligence principles were applied, as found by the trial court, the zero verdict for wrongful death implies that Pettis was equally negligent or more negligent than Mathieson. In such a circumstance, no damages at all should have been awarded, and the award of funeral expenses reflects a "sympathy" verdict for

Bunch. On the other hand, though, the simple fact is that the jury did *not* specifically find for Mathieson. Because the verdict was ambiguous and contradictory, liability was not conclusively established. This case is therefore remanded for new trial on the issues of liability and damages.

*Judgment reversed. Birdsong, P. J., and Johnson, J., concur.*

### ON MOTION FOR RECONSIDERATION.

1. Mathieson contends that in Division 1, this Court has improperly distinguished *Jordan v. Ellis*, 148 Ga. App. 286 (250 SE2d 859) (1978), erroneously finding that Bunch appealed both as administrator and individually. Bunch has appealed only in her individual capacity, as the mother of Starlyn Pettis, but this difference does not warrant a different holding.

The issue of whether Bunch appealed the jury's verdict individually or in her capacity as administrator is irrelevant to our analysis of *Jordan*. In *Jordan*, two separate civil actions were brought by two different individuals: an action for wrongful death by the child's mother and an action for funeral and other expenses by the father. The two actions were consolidated for trial, the jury delivered separate verdicts in the two actions, and the mother alone appealed only the wrongful death action. 148 Ga. App. at 286. We were unable to review the claims of a party to a case when neither the party nor the case was before us. Id. at 291.

In contrast, Bunch's claims were made in the form of a single action both below and in this Court, and the jury rendered a single verdict. Bunch understandably did not appeal issues on which she prevailed, but she, the verdict, and the action in its entirety are before this Court. See generally *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865 (1), 866 (463 SE2d 5) (1995).

More importantly, the verdict here, unlike that in *Jordan*, makes it impossible to determine the jury's intent. The *Jordan* jury awarded a reduced amount of damages that could be attributed only to an improper application of comparative negligence principles. The jury here rendered an ambiguous, inconsistent, and consequently inexplicable verdict. It is impossible to determine *what* legal principles the jury applied to Bunch's claims. We can speculate, as did the trial court, as to the jury's intent. Such speculation, however, cannot overcome the presumption that it is a rare life that has no value. See *Ferguson v. Orr*, 427 NW2d 732 (Minn. App. 1988).[2] The verdict cannot

---

[2] *Ferguson* does not, as contended by Mathieson, state that an award of zero damages is proper if an estrangement existed between the decedent and an heir. Instead that case states, "[I]f it is shown that there was an estrangement between the decedent and an heir, the jury

be upheld.

2. Mathieson also contends that our holding ignores the principle that a finding as to the value of one's life is for the jury. Our opinion recognizes that principle and acknowledges that the trial court aptly observed the presence of comparative negligence on the part of Pettis. The verdict, however, is ambiguous and does not clearly reflect an intent to find that Pettis placed no value on her own life.

3. Finally, Mathieson contends that we overlooked *Palo v. Meisenheimer*, 199 Ga. App. 24 (403 SE2d 881) (1991). The issue in *Palo* involved the inadequacy of damages, not the inconsistency of a verdict. Our ruling in this case is not that the award of zero damages is adequate or inadequate but simply that the verdict is inexplicably inconsistent and ambiguous and therefore cannot be upheld.

*Motion for reconsideration denied.*

DECIDED MARCH 12, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996 — 

*Gambrell & Stolz, Irwin W. Stolz, Jr., Charles N. Bowen, Seaton D. Purdom, Gary A. Barnes*, for appellant.

*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Dennis A. Brown*, for appellee.

is free to reflect that in the award." 427 NW2d at 735.