**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 1, 2021**

# In the Court of Appeals of Georgia

A21A0677. GEORGIA CVS PHARMACY, LLC v. CARMICHAEL.

MILLER, Presiding Judge.

One evening in December 2012, James Carmichael was shot multiple times by an unknown assailant in an Atlanta CVS parking lot, leaving him with multiple severe long-term injuries. Carmichael brought this premises liability case against CVS, arguing that CVS failed to take adequate security measures to protect the property. A Fulton County jury found in favor of Carmichael and returned an adjusted verdict of $42,750,000 against CVS. CVS appeals from the jury's verdict and the denial of its motion for new trial, arguing that (1) there was insufficient evidence to show that CVS caused Carmichael's injury or that CVS had superior knowledge of the danger; (2) the trial court erred in failing to charge the jury on a "personal malice" defense;

(3) the jury rendered a void verdict when it apportioned 0% of the fault to the unknown assailant; and (4) Carmichael was actually a licensee, not an invitee, and so CVS owed him a lesser standard of care.

We affirm the jury's verdict because (1) a reasonable jury could conclude from the evidence at trial that the robbery was reasonably foreseeable to CVS; that Carmichael did not have superior knowledge of the danger; and that increased lighting or a security guard presence could have deterred the attack; (2) CVS's proposed jury instruction was substantially covered by the trial court's other instructions; (3) the jury properly declined to apportion fault to the two non-parties on the verdict form; and (4) CVS waived review of its licensee argument by failing to present it below.

> In reviewing a verdict after the denial of a motion for new trial, we follow well-established principles. Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of the motion for new trial will not be disturbed.

2

(Citation omitted.) *Golden Isles Cruise Lines, Inc. v. Lowie*, 350 Ga. App. 1, 1-2 (827 SE2d 703) (2019).

The record adduced at trial shows that on December 20, 2012, at around 6:40pm, Carmichael was driving through Atlanta on his way home to Alabama when he decided to stop at a CVS on Moreland Avenue for some toiletries. While there, Carmichael called an acquaintance, Frankie Gray, and asked Gray to meet him at the CVS to complete a previously discussed sale of an iPad. Carmichael thought the CVS store "was a safe place to meet Mr. Gray" because "CVS is a national chain." Carmichael parked by the front door of the CVS store to meet with Gray.

After Carmichael met with Gray and Gray left, an unknown man jumped into Carmichael's car, put a "big" gun to Carmichael's head, threatened to kill him, and said, "Give me your money." Carmichael "took everything out" and pleaded for his life. Carmichael then grabbed his own pistol and attempted to shoot, but the gun jammed. The perpetrator then fired several rounds into Carmichael's stomach, back, and shoulder. After the perpetrator fled, Carmichael ran into the store for help before collapsing. Carmichael was comatose for about a month afterward, and he has since undergone multiple surgeries and continues to suffer from permanent nerve damage,

hearing loss, speech deficiencies, and chronic pain. Carmichael also incurred medical bills in the amount of $725,800.

Carmichael filed this premises liability action against CVS, arguing that CVS failed to take adequate security measures to protect the property, such as by having security guards present or having improved lighting in its parking lot.[1]

At trial, many current and former Moreland Avenue CVS store employees testified as to the store's conditions. Numerous employees testified that the store was located in a high-crime area. CVS's employees and managers considered the parking lot at the Moreland Avenue store unsafe, to the point that male employees regularly walked female employees to their cars. The employees would also park close to the building because of the spotty lighting in the parking lot. Two employees respectively rated the safety problems at the store as an "8" and "9" out of ten. Three employees testified that they were "not surprised" that Carmichael was shot on the premises.

Ceilia Wilson, a supervisor with CVS, testified that the store previously had security guards that provided a "good deterrent" and made her feel safer, but they were removed in 2010. The store's employees repeatedly requested security guards

---

[1]Carmichael also initially sued various companies that owned the land, as well as two fictitious CVS employees, but these other defendants were apparently dismissed before trial. CVS was the only named defendant at trial.

4

from CVS after that point, but their requests were all denied. The witnesses at trial testified that, after security was removed, at least three violent crimes occurred at the Moreland Avenue store. Patricia Ham, a former cashier at the store, testified that, in February 2011, a robber approached her at the register, showed her what she "believe[d] to be a handgun," threatened to kill her, and demanded money. Cierra Langford, a CVS customer, testified that, in June 2012, a robber approached her in the parking lot after she left the store. The robber followed her to her car, which was "parked right in front," and "hit [her] in [the] head and took [her] purse." Holly White, a CVS shift manager, testified that, in November 2012, a robber approached her in the store and demanded at gunpoint that she open the cash registers. Following these crimes, Langford filed an incident report with CVS, and Ham and White both requested security from CVS based on their respective incidents.

Carmichael's expert witness testified that "there's an overwhelming body of research which confirm[ed] that [armed security] has a high deterrent effect." In the expert witness's opinion, if CVS had a security guard present, "the robbery more likely would have been prevented." The expert witness also reviewed the lighting at the Moreland Avenue store's parking lot and testified that, in his opinion, it was spotty and inconsistent, and a uniform lighting would "facilitate better visibility in the

5

area to deter loitering, trespassing, [and] any of those undesirable activities." The investigating officer also testified that he found "armed security effective" and that "in [his] experience . . . people don't rob and shoot people while an officer is sitting there." Finally, CVS's corporate representative, Andrew Edwards, also testified in his deposition (which was read to the jury) that security guards were an effective deterrent, that "CVS wouldn't hire security guards if they didn't believe they were effective," and that "sufficient lighting" could "be a deterrent to violent crime."

The jury found CVS 95% at fault, Carmichael 5% at fault, and both Gray and the shooter 0% at fault for the incident, and it awarded Carmichael an adjusted total of $42,750,000 in damages (representing 95% of its total verdict of $45,000,000). After trial, CVS filed a motion for new trial and a motion for j.n.o.v. Following a hearing, the trial court denied the motions, and this appeal followed.

1. In three related arguments, CVS argues that the trial court erred by failing to direct a verdict or grant a new trial because the evidence was insufficient to support the element of causation and to show that it had superior knowledge of the danger presented by the unknown shooter. Specifically, CVS argues that (1) Carmichael failed to produce evidence showing that the attack was reasonably foreseeable to CVS; (2) the undisputed evidence showed that Carmichael had superior knowledge

6

of the danger; and (3) Carmichael's contention that increased lighting or a security guard presence would have prevented the attack was too speculative. We reject each of these arguments because there was sufficient evidence from which a reasonable jury could conclude that CVS proximately caused Carmichael's injuries and that CVS had superior knowledge of the danger.

"The standard of appellate review of a trial court's denial of a motion for a directed verdict is the any evidence test. Moreover, in considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion. We review any pure questions of law de novo." (Citations and punctuation omitted.) *Camelot Club Condominium Assoc., Inc. v. Afari-Opoku*, 340 Ga. App. 618, 620 (1) (798 SE2d 241) (2017). Additionally,

> [t]he standard of appellate review of the denial of a motion for new trial on the general grounds is essentially the same as that applicable to the denial of a motion for directed verdict or judgment n.o.v. The appellate courts can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported.

(Citation omitted.) *Morrison v. Kicklighter*, 329 Ga. App. 630, 631-632 (1) (765 SE2d 774) (2014).

7

[W]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. Although a landowner has a duty to invitees to exercise ordinary care to keep its premises safe[,] the landowner is not an insurer of an invitee's safety. In order to recover on a premises liability claim, a plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.

(Citations and punctuation omitted.) *Camelot Club*, supra, 340 Ga. App. at 620 (1) (a). We also must keep in mind that "questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." (Citation and punctuation omitted.) *Brookview Holdings v. Suarez*, 285 Ga. App. 90, 97 (2) (645 SE2d 559) (2007).

(a) CVS's primary contention is that the prior crimes that happened at the Moreland Avenue store are too dissimilar to the attack on Carmichael to support an inference that Carmichael's attack was reasonably foreseeable by CVS. We conclude that there was ample evidence from which a reasonable jury could conclude that the robbery of Carmichael was reasonably foreseeable to CVS because (1) all three

8

crimes were substantially similar to the present case so as to be probative; and (2) there was substantial other evidence to put CVS on notice that a robbery of a customer was a salient possibility.

> An intervening criminal act by a third party generally insulates a landowner from liability unless such criminal act was reasonably foreseeable. In order to be reasonably foreseeable, the criminal act must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers against the risk posed by that type of activity. However, while the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical; rather, such activity must be sufficient to attract the owner's attention to the dangerous condition which resulted in the litigated incident. In determining whether previous criminal acts are substantially similar to the occurrence causing harm[,] the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. The question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

(Citations and punctuation omitted.) *Camelot Club*, supra, 340 Ga. App. at 620-621 (1) (a) (i).

Here, as outlined above, Carmichael presented evidence of an armed robbery of a cashier, a robbery/"purse-snatching" of a customer in the parking lot, and another armed robbery of an employee, all occuring at the store within two years of the present incident. These robberies all involve similar circumstances to those involved in the present incident: two involved firearms, and at least one involved a physical attack on a customer in the parking lot. Additionally, "[w]hile these theft crimes occurred when the drivers were not near their vehicles, under the circumstances shown to have existed in this case, it was reasonable to anticipate that an unauthorized entry into a vehicle might occur when the driver was nearby and that personal harm to the driver would result." *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541, 548 (3) (a) (659 SE2d 905) (2008). On multiple occassions, we have found similar crimes to these to be substantially related to other armed robberies so as to show the foreseeability of further criminal activity. See, e.g., *Camelot Club*, supra, 340 Ga. App. at 621 (evidence of several armed robberies and aggravated assaults on the property was sufficient to support a jury finding that the victim's murder during a robbery was foreseeable to the property owner); *Wal-Mart Stores, Inc.*, supra, 290 Ga. App. at 548-549 (3) (a) (multiple thefts and aggravated assaults with firearms were sufficiently similar to armed robbery and shooting of plaintiff); *Carlock v.*

10

*Kmart Corp.*, 227 Ga. App. 356, 359 (2) (489 SE2d 99) (1997) (an armed robbery and two "purse snatchings" were substantially similar to an armed robbery and shooting); *Matt v. Days Inn of Am., Inc.*, 212 Ga. App. 792, 792-795 (443 SE2d 290) (1994) (prior robberies, including a "purse snatching" and other robberies without weapons, were substantially similar to a robbery with a weapon).[2]

Additionally, Carmichael presented evidence that these crimes were reported to CVS. Carmichael also presented evidence from numerous CVS employees and managers that CVS knew the store was located in a high-crime area. CVS's own employees, including its managers, considered the parking lot unsafe, and the store's employees repeatedly requested security guards based on these and other incidents, but their requests were denied. From all this evidence, the jury could conclude that the robbery of Carmichael was reasonably foreseeable to CVS.

(b) CVS next argues that the evidence was insufficient to support the jury's verdict because the evidence conclusively showed that Carmichael had superior knowledge of the harm. CVS's main contention is that Gray was involved as a perpetrator of the robbery, and because Carmichael had a prior relationship with

---

[2] Because these other crimes were substantially similar, CVS's argument that the trial court erroneously admitted this evidence under Rule 404 (b) similarly fails.

Gray, Carmichael necessarily had prior knowledge of the danger that Gray potentially presented. CVS further argues that Carmichael "kept a loaded gun handy because he knew his business was risky" and failed to take care of his own safety by shooting first. Contrary to CVS's argument, there was sufficient evidence from which the jury was entitled to find that Carmichael did not have superior knowledge of the danger.

As an initial matter, although Carmichael is correct that CVS did not move for a directed verdict on this basis, "a party may contend on appeal that the evidence is insufficient to support a verdict even if the party failed to move for a directed verdict or new trial in the trial court." *Aldworth Co., Inc. v. England*, 281 Ga. 197, 199 (2) (637 SE2d 198) (2006). Nevertheless, such a party may "obtain only a new trial on appeal if she prevails on a claim that the evidence was insufficient to sustain the verdict," and cannot obtain a judgment as a matter of law in their favor. Id.

Next, contrary to CVS's contention, the evidence was disputed as to whether Gray was involved in the robbery. Although law enforcement arrested Gray in connection with the incident, the charges "fizzled out" because they did not find evidence that Gray and the shooter were working together. Indeed, at trial, Carmichael testified that Gray "was a nice guy" who "didn't do it." Thus, there was some evidence from which the jury could conclude that the attack on Carmichael was

12

perpetrated by a total stranger and not by someone with whom he had a pre-existing relationship.

Even assuming *arguendo* that Gray was involved in the robbery, there was no evidence presented at trial that Carmichael knew beforehand that Gray potentially presented a risk to him. We previously rejected a similar argument in *Camelot Club Condominium Association, Inc.*, supra, 340 Ga. App. at 623 (1) (a) (ii), which also involved a shooting in a parking lot during a sales transaction. In that case, we concluded that the fact that the victim had a prior relationship with one of the assailants did not necessarily establish that he had prior knowledge of the danger. Id. at 623 (1) (a) (ii) n.7. We noted in that case that, "[a]lthough [the victim] had engaged in prior business dealings with one of the Assailants, the evidence indicated that he did not know the other two, and Camelot has pointed us to no evidence showing [the victim] was aware of or had reason to suspect that any of the three posed a threat." Id. We specifically distinguished cases "in which the plaintiffs had a prior personal relationship with their attackers and knew of a specific threat posed by them." Id.

Here, as in *Camelot Club*, no such evidence existed that Carmichael had any knowledge that Gray posed a particular or specific threat. There was no testimony or evidence showing that the communications between Carmichael and Gray evinced

13

anything out of the ordinary that would have been seen as threatening. Carmichael testified that he had sold electronics out of his car "hundreds, if not thousands, of times" and "never had a problem." As for the fact that Carmichael had a gun in his car, Carmichael testified that he "always carried a gun" for his own safety long before he started selling electronics. Further, the evidence showed that Carmichael had no knowledge of this particular CVS store or of its conditions. See *Camelot Club Condominium Association, Inc.*, supra, 340 Ga. App. at 622 (1) (a) (ii) (plaintiff did not have superior knowledge when there was no evidence that the plaintiff had any knowledge of prior criminal activity at the location). This case is thus readily distinguishable from those cases where we found that a premises liability claim was precluded based on the plaintiff's *specific* knowledge of the threat posed by the attacker. Compare *Cook v. Micro Craft, Inc.*, 262 Ga. App. 434, 438-440 (1) (585 SE2d 628) (2003) (decedent had superior knowledge of the criminal attack when the attacker and his violent history were previously known by the decedent and when the decedent had several conversations with the attacker wherein the attacker expressed his intention to kill the decedent); *Johnson v. Holiday Food Stores*, 238 Ga. App. 822, 824 (1) (520 SE2d 502) (1999) (plaintiff had knowledge superior to that of her

employer regarding an impending attack by her fiancé because she knew his personality and temperament as well as the extent that they had argued that day).

Thus, the jury was presented with the evidence detailed in Division (1) (a), CVS was aware of the dangers presented by the state of its property, and the jury was presented with no evidence that Carmichael was aware of any prior criminal activity at CVS. The jury was therefore entitled to conclude that Carmichael did not have superior knowledge of any danger posed by the robbery or of any other condition that would have subjected him to an unreasonable risk of harm. See *Camelot Club*, supra, 340 Ga. App. at 622-623 (1) (a) (ii) (jury was entitled to find that a property owner had superior knowledge when evidence was presented that a criminal attack on the property was reasonably foreseeable and when no evidence was presented that the victim had any knowledge of prior criminal activity on the property). Accordingly, CVS is not entitled to a new trial on this basis.

(c) CVS further argues that Carmichael failed to present evidence to prove beyond the realm of mere speculation that additional security measures would have prevented the attack. We conclude that Carmichael indeed presented sufficient evidence from which a jury could conclude that the lack of proper lighting or security officers on CVS's premises contributed to the robbery.

15

CVS's employees testified that the store previously had security guards that provided "a good deterrent" but that they were removed in 2010 and that at least three crimes occurred on the property afterward. CVS's own corporate representative also testified that security guards were an effective deterrent, that "CVS wouldn't hire security guards if they didn't believe they were effective," and that "lighting" could "be a deterrent to violent crime." The investigating officer also testified that he found "armed security effective" and that "in [his] experience . . . people don't rob and shoot people while an officer is sitting there." Carmichael's expert witness testified that "there's an overwhelming body of research which confirm[ed] that [armed security] has a high deterrent effect." In the expert witness's opinion, if CVS had a security guard present, "the robbery more likely would have been prevented." The expert witness also reviewed the lighting at the Moreland Avenue store's parking lot and testified that, in his opinion, if CVS had uniform lighting in the parking lot, it would have "facilitate[d] better visibility in the area to deter loitering, trespassing, [and] any of those undesirable activities."

Carmichael thus provided evidence that showed more than speculation that a lack of security or proper lighting contributed to his injuries. See *Brookview Holdings*, supra, 285 Ga. App. at 94-97 (2) (holding that the victim provided

sufficient evidence that the property owner's failure to provide security guards proximately caused his injuries where an expert witness and the investigating officer testified that security guards deterred crime, and noting the "inferences arising from the evidence that when security was provided no tenants were attacked, but once [the defendant] stopped providing security two tenants were the victims of violent crime"). Accordingly, the trial court did not err in failing to grant a new trial or j.n.o.v. on the issue of causation.

2. CVS next argues that the trial court erred by failing to instruct the jury that the "foreseeability of a criminal attack is negated when the plaintiff had superior knowledge, [such] as when an assault arises out of a pre-existing private relationship between the plaintiff and the attacker which was wholly unconnected with the premises." This argument fails because the trial court instructed the jury on the same underlying principles contained in CVS's proposed instruction.

At trial, CVS requested that the trial court include this "pre-existing relationship" instruction, but when the trial court did not include the instruction, CVS did not object after the instructions were finalized and the trial court charged the jury. "In civil cases, exceptions or objections to charges must be made after the jury is charged and before the verdict; objections made at charging conferences before the

17

charge is given do not preserve charging issues for appellate review." (Citations omitted.) *Vaughn v. Metropolitan Property & Cas. Ins. Co.*, 260 Ga. App. 573, 577 (9) (580 SE2d 323) (2003). Nevertheless, despite CVS's failure to object, we may review this enumeration under the substantial error doctrine. "[T]he appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." OCGA § 5-5-24 (c). A jury charge constituting substantial error harmful as a matter of law "is one that is blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it, or a gross injustice is about to result or has resulted directly attributable to the alleged errors." (Citation omitted.) *Smith v. Norfolk Southern Railway Co.*, 337 Ga. App. 604, 612 (2) (788 SE2d 508) (2016).

CVS is correct that its proposed jury instruction is an accurate summation of the law. See, e.g., *Johnson*, supra, 238 Ga. App. at 824 (1) (concluding that a plaintiff's premises liability claim failed as a matter of law because the attack on the plaintiff "grew out of a specific private relationship which had no connection with the premises or employment whatsoever.") (punctuation omitted). The trial court,

18

however, properly instructed the jury that Carmichael "could not recover if he had equal or superior knowledge of the risk and failed to exercise ordinary care for his own safety," which is one of the key elements of a premises liability claim. Our case law discussing "pre-existing relationships" as a bar to a premises liability claim do so as a specific application of this superior knowledge element to the facts in those cases. See, e.g., *Cook*, supra, at 440 (1) ("[T]he clear and undisputed evidence demonstrates that the decedent . . . had knowledge about the impending attack that was equal or superior to Micro Craft."); *Johnson*, supra, 238 Ga. App. at 824 (1) ("Given these facts, we cannot say that appellees had any reason to anticipate a criminal assault or superior knowledge of a condition that subjected Johnson to an unreasonable risk of harm."). CVS has pointed us to no case concluding that this "pre-existing relationship" principle constitutes an entirely new or separate defense apart from a simple failure to prove superior knowledge.

Because the trial court's instructions substantially covered the legal principles underlying CVS's proposed "pre-existing relationship" instruction, CVS has failed to show that the trial court erred, much less substantially erred, by failing to include its proposed instruction. See *Byrne v. Fierman*, 256 Ga. App. 443, 445 (2) (568 SE2d 494) (2002) ("The trial court's failure to give a jury charge in the exact language

19

requested is not error where the charges actually given substantially cover the principles contained in the request.") (citation omitted).

3. CVS next argues that the jury's verdict as to damages is void because the jury improperly apportioned fault by determining that the unidentified shooter was 0% at fault for Carmichael's injuries. It argues that such a result contravenes OCGA § 51-12-33 (c)'s directive that juries "shall consider the fault of all persons or entities who contributed to the alleged injury or damages." We conclude that the jury's verdict was not inconsistent, ambiguous, or vague so as to be void.[3]

"In a civil case, a verdict that is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside." (Citation and punctuation omitted.) *Anthony v. Gator Cochran Constr., Inc.*, 288 Ga. 79 (702 SE2d 139) (2010). "[T]he trial judge has a duty not to receive an indefinite, imperfect, or ambiguous verdict, and where an inconsistent or void verdict is returned by the jury, the trial judge should refuse to receive it and require

---

[3] Although Carmichael argues at length that CVS has not preserved this issue because CVS raised it for the first time in its motion for new trial, CVS challenges the verdict as void. "[A] party does not waive an objection to a verdict that is void, as opposed to voidable, by failing to object to the verdict form or the verdict as rendered before the jury is released." *Benchmark Builders v. Schultz*, 289 Ga. 329, 330 (1) (711 SE2d 639) (2011).

20

the jury to return for further deliberations." (Citation omitted.) *Hillside Orchard Farms, Inc. v. Murphy*, 222 Ga. App. 106, 111 (2) (473 SE2d 181) (1996).

> Of course, not merely any irregularity will render a verdict void. Indeed, under OCGA § 9-12-4, verdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity. Thus, the presumptions are in favor of the validity of verdicts, and if possible a construction will be given which will uphold them. Even if the verdict is ambiguous and susceptible of two constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied. Furthermore, in determining the proper interpretation of a jury verdict and to remove any ambiguity, the trial court may question the jury prior to disbursal in order to clarify the jury's intent.

(Citation and punctuation omitted.) *Anthony*, supra, 288 Ga. at 80-81.

We conclude that the jury's verdict in this case is not void because it is not indefinite, imperfect, ambiguous, or inconsistent. In its verdict, the jury clearly set out that it assigned 95% of the fault to CVS, 5% of the fault to Carmichael, and 0% of the fault to the shooter and Gray. There is nothing inherently inconsistent or vague about these findings that would necessarily render the verdict void. Compare *Benchmark Builders, Inc. v. Schultz*, 289 Ga. 329, 330 (1) (711 SE2d 639) (2011) ("An award of attorney fees but no other damages or affirmative relief under a statute that authorizes

21

an award of attorney fees to the 'prevailing party' is illegal and void[.]"); *Bunch v. Mathieson Drive Apartments, Inc.*, 220 Ga. App. 855, 857-859 (1) (470 SE2d 895) (1996) (jury verdict awarding no wrongful death expenses but awarding funeral expenses was inherently inconsistent and ambiguous and therefore void). The jury, after hearing the evidence in this case, simply found that the shooter was 0% at fault.

Citing to *Curran v. Scharpf*, 290 Ga. 780, 784 (726 SE2d 407) (2012), CVS argues that a jury verdict is void whenever "the jury does something it is not authorized to do," and that the jury was not authorized under the apportionment statute (OCGA § 51-12-33 (c)) to assign 0% fault to the perpetrator of the crime, but we reject these contentions. First, CVS's citation to *Curran* concerning the scope of the void verdict doctrine is to a non-precedential special concurrence by Justice Benham, see *Curran*, 290 Ga. at 784 (Benham, J., concurring specially), and we have found no binding precedent construing the void verdict doctrine as broadly as CVS desires. Second, OCGA § 51-12-33 (c) only directs, in relevant part, that "[i]n assessing percentages of fault, the trier of fact shall *consider* the fault of all persons or entities who contributed to the alleged injury or damages[.]" (Emphasis supplied.). As the trial court below concluded, the jury "considered" the fault of all who potentially contributed when they set out their verdict form assigning percentages of

22

fault between CVS, Carmichael, Gray, and the shooter. The plain language of the statute does not itself require that the trier of fact assign some minimum percentage of fault to each party. Our law instead states that "[w]hether the non-party contributed to the alleged injury is a question of fact for a jury to decide." *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 58 (1) (b) (805 SE2d 60) (2017).

To the extent that CVS argues that the evidence at trial did not support the jury's verdict assigning 0% of the fault to the shooter, we note that there was evidence presented showing that Carmichael attempted to shoot the robber first before the robber shot Carmichael. Thus, it is possible that the jury either found that the robber ended up shooting in self-defense and was worthy of no fault or that the jury instead assigned the amount of fault it would have assigned to the shooter to Carmichael instead. Therefore, there are at least some possible interpretations of the jury's verdict that are consistent with the evidence such that the jury's verdict was entirely proper. See *Lucas v. Charles Schwab & Co.*, 354 Ga. App. 522, 525 (2) (841 SE2d 150) (2020) (jury verdict was not void when the verdict could reasonably be constructed in a way that upheld it); *Golden Isles Cruise Lines, Inc.*, supra, 350 Ga. App. at 9-10 (2) (sufficient evidence supported the jury's verdict assigning 0% of the fault to the plaintiff and 100% of the fault to the defendant).

23

But even if we assumed that there was insufficient evidence to support the jury's apportionment of the fault, we are compelled to conclude that any such error would be harmless[4] under the Supreme Court of Georgia's recent decision in *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, ___ Ga. ___ (Case No. S20G1419) (Aug. 10, 2021). In *Alston & Bird, LLP*, the Court analyzed the interplay between the statutory text of OCGA §§ 51-12-33 (a), (b), and (c) concerning when a jury is entitled to apportion fault to non-parties. The Court concluded that, under the plain text of the apportionment statute, a trial court is only entitled to apportion damages to non-parties under OCGA § 51-12-33 (b) when there are multiple named defendants in the case. Id. at ___ (2). Otherwise, when only one named defendant is present in the case, OCGA § 51-12-33 (a) controls and provides that damages may only be reduced or apportioned based on the amount of fault assigned to the plaintiff. Id. at ___ (2). The Court therefore concluded that "[t]here is no grant of authority in the

---

[4] "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." OCGA § 9-11-61.

24

apportionment statute to reduce damages according to the percentage of fault allocated to a nonparty in a case with only one named defendant." Id. at ___ (2).

In this case, just as in *Alston & Bird, LLP*, CVS was the only named defendant in the case by the time the case proceeded to trial. See *Schriever v. Maddox*, 259 Ga. 558, 561 (2) (c) (578 SE2d 210) (2003) ("[S]ince the company doctor was no longer a party to the action," the case was no longer "an action [] brought against more than one person" for apportionment purposes) (construing a former version of OCGA § 51-12-33). Thus, regardless of how much fault the jury assigned to the non-party shooter, the amount of damages awarded against CVS would not change because OCGA § 51-12-33 (b) does not allow the amount of damages to be reduced based on non-party fault in these circumstances. Thus, any alleged failure by the jury in declining to assign fault to the non-party shooter based on this evidence was ultimately harmless.

To be sure, the jury's decision to apportion no fault to the shooter may well be considered unusual. For the reasons stated above, however, we cannot find any reversible error based on the jury's apportionment of fault.[5]

---

[5] CVS relatedly argues that Carmichael made an improper closing argument when he argued that the jury should apportion 0% fault to the shooter. However, CVS did not object to Carmichael's closing argument, and so it has waived any challenge

4. CVS finally argues that the evidence shows that Carmichael was actually a licensee, not an invitee, and so CVS owed him a lesser duty of care. At trial, however, CVS withdrew any argument that Carmichael was a licensee, and it affirmatively represented to the trial court that it was "not going to make any argument that [Carmichael's] entitled to a lower duty." As a result, the trial court instructed the jury, without any objection from CVS, on the duty of care owed to invitees, not licensees. Accordingly, because CVS expressly acquiesced to the court's instruction and the jury's consideration of the case under an invitee framework, CVS has waived this argument. See *Moody v. Dykes*, 269 Ga. 217, 220 (3) (496 SE2d 907) (1998) (trial counsel's representation at charge conference that "I won't object to anything. I'll accept it all" waived even substantial error review of the jury charge).

We therefore reject all of CVS's arguments and affirm the jury's verdict and the denial of CVS's motion for new trial.

*Judgment affirmed. Hodges, J., concurs. Pipkin, J., concurs in judgment only.*

---

to the argument. *Berryhill v. Daly*, 358 Ga. App. 139, 140 (854 SE2d 338) (2021). Although CVS argues that it can still challenge the closing argument based on *Stolte v. Fagan*, 291 Ga. 477, 479-483 (2) (731 SE2d 653) (2012), we note that, after the briefs were filed in this case, the Supreme Court of Georgia overruled *Stolte* in its decision in *Williams v. Harvey*, 311 Ga. 439, 447-451 (1) (b) (858 SE2d 479) (2021), and so that case does not help CVS and did not influence our analysis.